IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Hope L.G., | ) |
|       Plaintiff, | ) ) ) ) Case No.: 22-cv-50029 |
| v. | ) ) Magistrate Judge Margaret J. Schneider |
| Leland Dudek, Acting Commissioner of Social Security,[1] | ) ) ) |
|       Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

      Plaintiff, Hope L.G., seeks review of the final decision of the Commissioner of the Social Security Administration denying her disability benefits. For the reasons set forth below, Plaintiff's motion to reverse and remand the Commissioner's decision [13] is denied and the Commissioner's motion for summary judgment [18], is granted.

**BACKGROUND**

    A.    **Procedural History**

      On April 29, 2019, Hope L.G. ("Plaintiff") filed an application for disability and disability insurance benefits. R. 26. This application alleged a disability beginning on October 1, 2018. *Id.* The Social Security Administration ("Commissioner") denied her application on August 16, 2019, and upon reconsideration on December 24, 2019. *Id.* Plaintiff filed a written request for a hearing on February 10, 2020. *Id.* On April 6, 2021, a telephonic hearing was held by Administrative Law Judge ("ALJ") Lee Lewin where Hope L.G. appeared and testified. Plaintiff was represented by counsel. *Id.* At the hearing, an impartial vocational expert, Susan Entenberg, also testified. *Id.*

      On April 28, 2021, the ALJ issued her written opinion denying Plaintiff's claims for disability insurance benefits. R. 26-47. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 1-7. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [8]. Now before the Court are Plaintiff's brief in support of her motion to reverse and remand the Commissioner's decision [13], the Commissioner's motion for summary judgment, and response to Plaintiff's brief [18], and Plaintiff's reply brief [19].

---

[1] Leland Dudek is substituted for Martin O'Malley pursuant to Federal Rule of Civil Procedure 25(d).

### B. The ALJ's Decision

In her ruling, the ALJ followed the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one of the five-step analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 1, 2018. R. 28. At step two, the ALJ found that Plaintiff had the following severe impairments: depression, generalized anxiety disorder, bipolar disorder, post-traumatic stress disorder, and chronic obstructive pulmonary disease. R. 29. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination or impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 30-32.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following non-exertional limitations: Plaintiff can understand, remember, and carry out instructions for simple, routine, repetitive tasks with sufficient persistence, concentration or pace to timely and appropriately complete such tasks. Plaintiff can adjust to simple routine workplace changes with occasional contact with coworkers, supervisors, and the general public. Plaintiff would have no difficulty solving tasks with the general public and no group tandem or teamwork. There should be no fast-paced production rate or strict quota requirements, but Plaintiff could meet end of day requirements. Plaintiff must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, and pulmonary irritants. R. 33. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 46. Finally, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including janitor, hotel housekeeping, and dishwasher. R 46-47. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from October 1, 2018, through the date of decision, April 28, 2021. R. 47.

### STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). While substantial evidence is "more than a mere scintilla, . . . the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citation omitted). The substantial evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (internal quotation marks and citation omitted). An ALJ "need not specifically address every piece of evidence but must provide a logical bridge between the evidence and [the] conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (internal quotation marks and citation omitted); see also *Warnell*, 97 F.4th at 1054; *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("While we have never required an ALJ to address

every piece of evidence or testimony in the record, the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits.").

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (internal quotation marks and citation omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, reweighing or resolving conflicts in the evidence, or deciding questions of credibility. . . . [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020).

## DISCUSSION

Plaintiff argues the ALJ (1) committed reversible error in assessing Plaintiff's RFC; (2) failed to follow the requirements of 20 C.F.R. § 404.1520c in weighing medical opinion evidence; and (3) provided a legally insufficient assessment of Plaintiff's subjective allegations. The Court concludes that the ALJ appropriately weighed and evaluated the medical opinions and Plaintiff's subjective symptoms and therefore the RFC assessment was well-supported by substantial evidence.

### A. Plaintiff's RFC

First, Plaintiff argues that the ALJ's mental RFC findings that Plaintiff could understand, remember, and carry out instructions for simple, routine, repetitive tasks with sufficient persistence, concentration or pace to timely and appropriately complete such tasks; could meet end of day requirements, but not fast-paced production rate or strict quota requirements; could not perform group of team work; and could occasionally interact with supervisors, coworkers, and the public, was not supported by the record.

A claimant's RFC is the maximum work she can perform despite any limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 1996 WL 374184, at *2. An ALJ must base a claimant's RFC on all relevant evidence in the record, including the claimant's medical history, medical findings and opinions, reports of daily activities, and the effects of the claimant's symptoms and treatment. 20 C.F.R. § 404.1545(a)(3); SSR 96-8p, 1996 WL 374184, at *5. "Although the responsibility for the RFC assessment belongs to the ALJ, an ALJ… must explain how [s]he has reached [her] conclusion." *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005)). "Essentially, an ALJ's RFC analysis must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (internal quotations and citation omitted). In a recent case, the Seventh Circuit has noted: "our review proceeds with a light touch – not holding ALJs to an overly demanding evidentiary standard and in turn reinforcing that claimants bear the affirmative burden of proving their disability." *Thorlton v. King*, 127 F.4th 1078, 1080 (7th Cir 2025).

The ALJ's findings as to Plaintiff's RFC include Plaintiff's testimony at the hearing, a review of Plaintiff's physical and mental health treatment records (dating back to 2018), a

3

summary of Plaintiff's abilities as to her activities of daily living, medical opinions (including information from Plaintiff's relevant examinations), and third-party reports. As to Plaintiff's treatment records setting out her mental impairments, the ALJ's findings show that Plaintiff reported signs of depression to her primary care provider in April of 2018, where she was slightly anxious but declined a referral to therapy. She was taking Paxil at that time. In October 2018, she was not taking any medication for depression. R. 35. In April 2019, Plaintiff was diagnosed with moderate major depression and generalized anxiety disorder and referred to a psychiatrist. At that time, she was oriented and her dress and personal hygiene were normal and appropriate. R. 36. In May 2019, Plaintiff presented to the emergency department for an evaluation by a social worker. Plaintiff was examined and discharged to her home. Also in May, after an intake for mental health services, Plaintiff was recommended for a psychiatric evaluation. In June, she saw her primary care provider and reported that her symptoms were slightly improved. However, later that month, Plaintiff was hospitalized for a week with severe depression. *Id*. In July, Plaintiff underwent a psychological consultative examination. At the exam, she was alert and oriented with organized and intact thoughts, and no indications of delusional patters of thinking or hallucinations. Her auditory memory, attention, and concentration were impaired, and she was diagnosed with bipolar disorder and PTSD. R. 37. Also that month, Plaintiff met with her primary care provider. She reported at that time that her medications were working well, and her symptoms were improved. She reported significantly improved depression, improved sleep disturbances, no hallucinations, and no suicidal ideation. Plaintiff's psychiatric examinations and evaluations through September 2019 were normal. In October 2019, Plaintiff underwent a psychiatric evaluation. She was alert, oriented, coherent, goal directed, had fair memory, fair insights, and fair judgment. R. 37-38. Progress notes from October and November 2019 showed generally normal mood and behavior. As to medications, Plaintiff continued on Wellbutrin and was started on Vraylar. R. 38.

In February 2020, Plaintiff underwent a psychiatric evaluation. At that time, she reported her depression was better, but she was struggling with anxiety. She was advised to continue her Paxil medication and hydroxyzine was added for anxiety. Additionally, from February 2020 through September 2020, Plaintiff attended individual psychotherapy and medication management appointments. During her psychotherapy visits, Plaintiff's perception, thought content, cognition, insight, and judgment were within normal limits, and she reported that the medications were working for anxiety. She reported making good progress with a happy mood and affect. R. 39-40. In November 2020, Plaintiff reported frustrations regarding unemployment, keeping appointments, and financial issues. R. 40. Treatment, medication management, and psychotherapy progress notes from January 2020 through December 2020 indicate that Plaintiff was stable, with normal moods, behavior, thought content and judgment, and she was negative for psychiatric symptoms. R. 40-41.

At her benefits hearing, Plaintiff testified that she was unable to work because she could not focus, remember, follow tasks, was angry all of the time, and did not like to be around other people. R. 33. She noted she was prescribed medications which she acknowledged were partially helpful. Plaintiff testified she had not seen a therapist since December 2020. She further testified she did not like people watching her when she worked, could not complete job duties, had difficulty remembering instructions, and still experienced mental health symptoms despite medication. R. 34.

The ALJ found that despite Plaintiff's representations regarding her disabilities, the record revealed that she was able to engage in many activities of daily living. Plaintiff testified she had a driver's license and drove daily, went to the library, lived alone, showered and dressed herself, did laundry, cooked and cleaned for herself, did her makeup, and styled her hair. R. 41. Additionally, she visited a friend monthly, sought and talked with her neighbor every other day, helped her neighbor with her medication and cleaned her apartment. Plaintiff had maintained a long-term relationship with her boyfriend and had been helping a 10-year-old neighborhood child for a year. *Id*.

The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms, were inconsistent with the medical evidence of record: "The medical evidence of record fails to document significant objective findings that would support limitations greater than those outlined in the residual functional capacity." R. 34. As to understanding, remembering, or applying information, the ALJ found that Plaintiff had a mild limitation. While Plaintiff reported problems with memory, understanding and following instructions, the ALJ noted that Plaintiff was able to participate in a wide variety of activities of daily living. Additionally, the record showed no indication that Plaintiff was unable to understand her treatment or medication usage. While her psychiatric consultative examination showed that her memory was limited, Plaintiff's longitudinal exam findings revealed normal cognition and normal memory. As to interacting with others, the ALJ found Plaintiff had a moderate limitation. While Plaintiff alleged that she cried a lot, was depressed, did not like to be around others, and was angry and irritable all of the time, the evidence showed that she maintained relationships with others, mentored a 10-year-old neighbor girl, assisted a disabled neighbor, reported having good social support and many friends. She also indicated a supportive son. Regarding concentrating, and persisting or maintaining pace, the ALJ found Plaintiff had a moderate limitation. While Plaintiff reported problems with concentration and completing tasks, the record indicated, as noted above, that Plaintiff lived alone, cared for herself without assistance, including cooking, drove a car, cleaned, and did laundry. The ALJ noted that Plaintiff's attention and concentration were impaired at the psychological consultative exam, but other findings revealed her thought content was within normal limited. R. 31-32. Finally, the ALJ found that Plaintiff had a mild limitation as to adapting or managing oneself. Despite her complaints, Plaintiff was consistently described as having normal mood, behavior, thought content, and judgment. Again, the same wide range of activities of daily living indicated her ability to adapt and manage herself. R. 32.

As part of her decision, the ALJ also considered first the medical opinion evidence set forth by state agency psychological consultant David Voss, Ph.D at the initial level, and Rose Moten, Ph.D at the reconsideration level. Both consultants found Plaintiff's depressive, bipolar, and related disorders to be severe. They opined that Plaintiff had mild to moderate limitations, as noted above, and could maintain the concentration and persistence necessary to carry out simple tasks at a pace typical of a work environment. Specifically, they found that Plaintiff would have no difficulty attending work regularly and would require no special supervision. Her limitations would not interfere significantly with her ability to complete routine work tasks, yet a work setting with limited social demands would be best. As noted in the ALJ's decision, the consultants found that: [o]verall, the [Plaintiff] retains the mental capacity for work related activities that involve simple instructions and routine/repetitive tasks." R. 43. The ALJ found Dr. Voss and Dr. Moten's opinions generally persuasive and supported by the record. The ALJ noted that the opinions

5

presented relevant evidence, included explanations, and were considered with the record as a whole. Further, the ALJ relied on the consultants' understanding of social security disability programs and requirements. R. 43-44.

Next, the ALJ considered the opinions set forth by Kenneth Heinrichs, Psy.D. Dr. Heinrichs conducted a psychological examination of Plaintiff, which revealed limitations in memory, attention, and concentration, that he concluded would likely interfere with her ability to engage in some work activities without close supervision. R. 44. Also, Dr. Heinrichs opined that her social interaction, while appropriate, was marked with some emotional lability, and she may have difficulty adjusting to changing expectations in a work environment. The ALJ considered Dr. Heinrichs' opinion but found it to be not well supported or overall persuasive due to his assessment lacking specific vocational limitations. *Id*.

Finally, the ALJ considered the opinion of Plaintiff's therapist, Elisha Mairet, LCSW. Ms. Mairet opined that Plaintiff had an extreme limitation in understanding, remembering, or applying information, and a marked limitation in interacting with others, concentration, persistence, or maintaining pace and adapting or managing herself. The ALJ did not find Ms. Mairet's opinion persuasive, stating it was "highly inconsistent" with the evidence of record, including the objective medical evidence. R. 44. The ALJ noted that Plaintiff's initial evaluation included findings within normal limits, with normal cognition, perception, insight, and judgment, with no delusions or hallucinations. R. 45. Further, the ALJ decision noted that the other relevant evidence of record supported an inference that Plaintiff had at best mild to moderate psychological problems, and therefore, the restrictions contained in the RFC would accommodate any impairment identified by Ms. Mairet. *Id*.

As to further evidence considered by the ALJ in formulating the intensity, persistence, and limiting effects of Plaintiff's symptoms, for purposes of the RFC, the ALJ looked at a third-party function report provided by Plaintiff's friend. R. 45. The report described extreme limitations on Plaintiff's abilities. The friend stated that Plaintiff lived in a car, did not cook or do household chores, and could not remember to shower. *Id*. The ALJ found the third-party report neither valuable nor persuasive as it was inconsistent with the medical evidence of record, both Plaintiff's physical and mental assessments, as well as Plaintiff's hearing testimony. *Id*.

As described above, the ALJ underwent a thorough analysis of Plaintiff's medical mental health history. She acknowledged Plaintiff's mental health impairments, including depression, anxiety, bi-polar disorder, and PTSD, but found that the record did not support a finding that Plaintiff had more than a moderate limitation in any given area. In addition to a review of medical examinations, the ALJ took into account Plaintiff's success in her activities of daily living. By her own testimony, Plaintiff informed the ALJ that she maintained relationships with others, drove, mentored a neighborhood child, helped a disabled neighbor, ate out at restaurants and at friends' houses, and had a good social support system. R. 31. This information, along with her medical history, supports the ALJ's findings that Plaintiff had "moderate" limitations as to interacting with others and with regard to concentration, persisting, or maintaining pace. At her psychiatric consultative examination, it was determined that Plaintiff had normal cognition and normal memory. It was also found that Plaintiff enjoyed a normal mood, behavior, thought content, and normal judgment. These medical findings led the ALJ to determine that Plaintiff had "mild"

limitations as to understanding, remembering, or applying information, as well as adapting and managing oneself. These findings provide substantial evidence that that support the ALJ's RFC of a full range of work with certain non-exertional limitations. R. 31-33.

Plaintiff argues that the ALJ erred in evaluating her limitations in concentration, persistence, or pace. As noted above, the ALJ's RFC allowed for a moderate limitation in maintaining concentration, persistence, or pace to complete simple, routine, and repetitive tasks, and end of day requirements, but not fast-paced production rate or strict quota requirements. Plaintiff's arguments that the RFC's limitation stating Plaintiff could meet end of day requirements but not sustain a fast-paced production rate or meet strict quota requirements was "vague and undefined," is undeveloped and not persuasive. Plaintiff's reliance on *Varga v. Colvin*, 794 F.3d 809, 815 (7th Cir. 2015) is unavailing. *Varga* held that the ALJ committed reversible error in failing to address all of Plaintiff's limitations in the hypothetical presented to the vocational expert at the hearing. 794 F.3d at 814-15. Here, the record reveals that the ALJ presented a hypothetical to the vocational expert at the hearing that is consistent with the RFC. Additionally, Plaintiff does not make a substantive argument that the hypothetical was flawed or that the any error was made during the vocational expert's testimony.

Next, Plaintiff argues that the ALJ provided no explanation for her conclusion that Plaintiff had the persistence, concentration, or pace to timely and appropriately complete simple, routine, and repetitive tasks. Again, Plaintiff provides no substantive argument for this position. As set out by the ALJ in her thorough decision, the medical records showed that Plaintiff was consistently within normal limits for cognition, insight, and judgment. Further, she was able to manage her daily life with interactions with others and a satisfactory ability to care for herself. "The law does not require ALJs to use certain words, or to refrain from using others, to describe the pace at which a claimant is able to work. Nevertheless, the residual functional capacity analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1232 (7th Cir. 2021). Here, the ALJ's RFC is supported by a thorough review of claimant's limitations and supported by the medical record and therefore is supported by substantial evidence.

Plaintiff further argues that the ALJ failed to include all the limitations that the state agency psychological consultants provided in their assessment of Plaintiff's RFC. While courts have repeatedly held, "nothing requires the ALJ to adopt each and every limitation opined by a physician, even when she finds the opinion persuasive." *Darius B. v. O'Malley*, No. 23 C 3699, 2024 WL 1214571, at * 3 (N.D. Ill. March 21, 2024) (citations and quotations omitted), this Court also acknowledges that "[t]he ALJ must adequately discuss the issues and must build an accurate and logical bridge from the evidence to [her] conclusion." *Curvin v. Colvin*, 778 F.3d 645, 648 (7th Cir. 2015). Plaintiff supports her argument with one response in the mental residual functional capacity assessment conducted by Drs. Voss and Moten. Plaintiff argues that these consultants opined that Plaintiff had a "limited ability to maintain attention and concertation [sic] for extended periods; and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." [13], p. 5. However, a review of the record itself reveals that while that statement represents the question presented to the consultants, the response itself was that Plaintiff's was "moderately limited" in this area and, more significantly, the consultants

7

provided a narrative to better explain their statement. R. 120, 136. The narrative portion of the answer to that question states: "The medical evidence, including the PCE & ADLs, indicates that the claimant can maintain the concentration and persistence necessary to carry out simple tasks in a reasonably punctual fashion and consistent pace in a typical work environment. She would have no difficulty attending work regularly and would require no special supervision beyond what is commonly provided in a[n] ordinary work setting. Overall, her mental MDI would not interfere significantly with her ability to complete routine work tasks." *Id*. Based on this opinion of record, the Court finds Plaintiff's argument that the ALJ erred by failing to include further limitations in Plaintiffs' RFC based on the consultants' opinions baseless. Regardless, the Court notes that "[w]e require only that an ALJ consider the entire record; they are not obligated to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." *Langley v. O'Malley*, No. 2:21-cv-00248, 2024 WL 3649021, at * 4 (7th Cir. Aug. 5, 2024) (citations and quotations omitted). Here, the Court finds that the ALJ's RFC was supported by substantial evidence.

Finally, Plaintiff argues that the ALJ failed to properly assess Plaintiff's RFC in determining her limitations in interacting with others. Again, Plaintiff argues that the ALJ erred in this limitation because the state agency psychological consultants found she had a "moderate limitation" and the RFC fails to account for this. However, in response to this question in the assessment form, the consultants' narrative provides that "[m]edical evidence indicates that the claimant's capacity to navigate social interactions is moderately impaired by mood fluctuations. A work setting with limited social demands would be best." R. 121, 136. Plaintiff's RFC includes that Plaintiff can adjust to simple routine workplace changes with occasional contact with coworkers, supervisors, and the general public; and that Plaintiff would have no difficulty solving tasks with the general public and no group tandem or teamwork. The Court, again, finds that the ALJ properly considered the consultants' opinions in crafting Plaintiff's RFC as to her ability to interact with others.

Taking all of Plaintiff's arguments into account and after a close review of the ALJ's decision as well as the record, the Court finds that substantial evidence supported the ALJ's conclusions and limitations in Plaintiff's RFC. *See Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024) ("To warrant reversal, [plaintiff] must show that the ALJ's determination was not supported by substantial evidence.").

### B. Medical Opinion Evidence

Next, Plaintiff argues that the AJL failed to follow the requirements of 20 C.F.R. § 404.1520c in weighing the medical opinion evidence of Elisha Mairet, LCSW. 20 C.F.R. § 404.1520c provides that the ALJ consider, among other things, the supportability and consistency of medical opinions. Plaintiff argues that the ALJ's finding that Ms. Mairet's opinion was not persuasive because it was inconsistent with the objective medical evidence and other evidence of record was unsupported.

In her decision, the ALJ stated that Ms. Mairet's opinion was "out of proportion to her treatment notes course of treatment" and not well supported by the other evidence of record. R. 44-45. The decision states that Ms. Mairet's initial evaluation showed that most findings were

8

within normal limits, including cognition, thought content, perception, insight, and judgment. Additionally, the psychotherapy records showed that Plaintiff was keeping medical appointments, maintaining relationships with her boyfriend and neighbors, and consistently making "good progress." R. 45. Reviewing the decision, the Court finds that the ALJ did a more than adequate job of explaining why relevant evidence of record was inconsistent with Ms. Mairet's opinions. Additionally, the ALJ's RFC does take into account Plaintiff's mental health impairments and accommodates them with mild and moderate limitations, consistent with the evidence in the record. Also, it is well-established that a reviewing court will not "'reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it.'" *Warnell*, 97 F.4th at 1052-52, quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). The Court finds that the ALJ's reasoning as it applied to discounting Ms. Mairet's opinion was supported by substantial evidence.

### C. Subjective Symptoms

Finally, Plaintiff makes the argument that the ALJ erred in evaluating Plaintiff's treatment history as well as her activities of daily living with respect to the ALJ's analysis of Plaintiff's subjective symptoms.

A claimant's subjective symptoms "will be determined to diminish [their] capacity for basic work activities to the extent [they] can reasonably be accepted as consistent with the… evidence." 20 C.F.R. § 404.1529(c)(4). When assessing a claimant's subjective symptom allegations, an ALJ considers several factors, including the objective medical evidence, the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations. 20 C.F.R. § 416.929(c); SSR 16-3p, 2017 WL 5180304, at *5-8. Because of the unique position of the ALJ to observe the claimant, this Court will normally not disturb such a credibility determination when it is supported with explanation. *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997). "As long as an ALJ gives specific reasons supported by the record, [this Court] will not overturn a credibility determination unless it is patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022). An ALJ's assessment is patently wrong if the decision lacks any explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017).

After a review of the record – including Plaintiff's medical mental history, examinations, opinions, hearing testimony, and all other evidence – the ALJ concluded that while Plaintiff's mental impairments could be expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of those symptoms could not be wholly accepted. R. 46. Plaintiff has not shown that the ALJ's reasoning as to Plaintiff's subjective symptoms was patently wrong. The ALJ considered the record medical mental health evidence and concluded that Plaintiff's statements regarding her limitations were inconsistent with the record as a whole. The ALJ acknowledged that she had severe impairments, including depression, generalized anxiety disorder, bipolar disorder, and post-traumatic stress disorder. The decision further notes that Plaintiff was once hospitalized, pursued formal mental health treatment, and was prescribed and took medications to address her symptoms. The ALJ took these issues into account when crafting an RFC that included specific limitations designed to address Plaintiff's specific needs. Plaintiff's position that that the ALJ opinion did not do enough to recognize how ongoing mental health treatment supported Plaintiff's subjective symptoms allegations is

unsupported.

Plaintiff specifically argues that the ALJ failed to evaluate how any activity of daily living was inconsistent with any of Plaintiff's other statements or the medical record. However, throughout the ALJ's lengthy opinion, Plaintiff's testimony as to the extent of her abilities regarding activities of daily living is highlighted and analyzed. The Court agrees with the Commissioner that "[i]t is obvious that plaintiff's numerous and varied daily activities contradicted her claims of disability." [18], p. 14. The ALJ found that despite Plaintiff's testimony of persistent symptoms and active treatment, her mental examination findings did not support the severity of her complaints, and her abilities as to varied activities of daily living were inconsistent with the severity of her claimed deficits. R. 42. *See Jeske v. Saul*, 955 F.3d 583, 593 (7th Cir. 2020) ("…the ALJ considered [plaintiff's] daily-living activities as one factor – among others – indicating that [plantiff's] descriptions of her mental-functioning limitations were not fully credible. This use of daily-living activities, to assess credibility and symptoms, was not improper."). While Plaintiff disagrees with the ALJ's conclusions as to her subjective allegations, as noted above, it is not this Court's role to reweigh the evidence or substitute its judgment for the ALJ's determinations. *See Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) ("If substantial evidence supports the ALJ's conclusions, the court 'must affirm the ALJ's decision even if reasonable minds could differ about the ultimate disability finding.'" (quoting *Brown v. Colvin*, 845 F.3d 247, 251 (7th Cir. 2016))). The Court finds that the ALJ provided a legally sufficient assessment of Plaintiff's subjective symptom allegations and supported her decision with substantial evidence.

## CONCLUSION

For the reasons stated above, Plaintiff's motion to reverse and remand the Commissioner's decision [13] is denied and the Commissioner's motion for summary judgment [18], is granted.

Date: March 21, 2025            ENTER:

*Margaret J. Schneider*
United States Magistrate Judge